# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| **ALEXANDRIA STOBBE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 4:16-cv-463** |
| | ) | |
| **ROCKHURST UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1453, Defendant Rockhurst University ("Rockhurst") hereby removes this action from the Circuit Court of Jackson County, Missouri to the United States District Court for the Western District of Missouri. As grounds for removal, Rockhurst states as follows:

## Jurisdiction

1. The Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332(d), and the case is removable under § 1453, in that it is a class action with minimal diversity, more than 100 members, and more than $5,000,000 at issue exclusive of interest and costs. The Civil Cover Sheet is attached to this Notice as **Exhibit A**.

## Factual Background

2. This action is a class action lawsuit pending in the Circuit Court of Jackson County, Missouri, styled *Alexandria Stobbe v. Rockhurst University*, Case No. 1616-CV09355. A complete copy of the file from the Jackson County

**EXHIBIT A**

case is attached to this Notice.  Specifically, attached as **Exhibit B** is a copy of the Petition; attached as **Exhibit C** is a copy of the current docket; attached as **Exhibit D** is the Summons; and attached as **Exhibit E** is the Return of Service.

3.     Plaintiff's Petition generally alleges that Rockhurst unlawfully disseminated employees' personally identifiable information ("PII") to third parties when it experienced a data breach.  Ex. B, ¶ 1.  Plaintiff alleges four separate causes of action and purports to bring them on behalf of a class of 1,200 similarly situated employees.

4.     Plaintiff's Petition requests the following relief on behalf of herself and the putative class members:  a declaration "that Defendant breached its implied contract with Plaintiff and Class members;" a declaration "that Defendant negligently disclosed Plaintiff's and the Class members PII;" a declaration "that Defendant has invaded Plaintiff's and Class members' privacy;" "actual damages to Plaintiff and the other members of the Class;" an Order requiring "Defendant to disseminate individualized notice of the Data Breach to all Class members;" an Order requiring "Defendant to pay attorneys' fees and litigation costs to Plaintiff;" an Order requiring "Defendant to pay both pre- and post-judgment interest on any amounts awarded;" and "such other and further relief as may be just and proper."  Ex. B, pp. 18-19.

## **Grounds for Removal**

5.     A defendant may remove a state court action to federal district court where the district court has original jurisdiction over the action.   28

U.S.C. § 1441.  This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), part of the Class Action Fairness Act ("CAFA").

6.    This action is a "class action" under CAFA because it a "civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  *See* 28 U.S.C. §§1453(a), 1332(d)(1)(B).  Plaintiff brings her class claims "[p]ursuant to Rule 52.08 of the Missouri Rules of Civil Procedure," *see* Ex. B, ¶ 42; and "[Federal] Rule 23 and [Missouri] Rule 52.08 are essentially identical."  *Dale v. DaimlerChrysler Corp,* 204 S.W.3d 151, 161 (Mo. Ct. App. 2006).

7.    Removal of a putative class actions under CAFA is proper if three elements are satisfied:  (1) there are one hundred (100) or more members in the proposed class; (2) there is minimal diversity (*i.e.*, at least one member of the proposed class is a citizen of a State different from any Defendant); and (3) the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00.  *See* 28 U.S.C. § 1332(d)(2), (5), and (6).  *See also Grawitch v. Charter Communications, Inc.*, 750 F.3d 956, 959 (8th Cir. 2014).  This action satisfies all of these requirements.

a.    The Proposed Class Consists of 1,200 Individuals.  Plaintiff alleges that "the putative Class is comprised of approximately 1200 employees." Ex. B, ¶ 43.  Thus, CAFA's 100-class member requirement is satisfied on the face of Plaintiff's Petition.

3

b. There is Minimal Diversity Between the Class Plaintiffs and Rockhurst. Rockhurst is a citizen of Missouri. Ex. B, ¶ 13 ("Rockhurst University is a Missouri not-for-profit corporation with its headquarters in Kansas City, Missouri."). The putative class members are "are faculty, staff and/or are student employees of Rockhurst University." *Id.*, ¶ 1. Many of these proposed class members are citizens of other states, primarily the neighboring state of Kansas. Minimal diversity therefore exists.

c. The Aggregated Claims of the Putative Class Members Exceed $5 Million Dollars. Plaintiff requests the following relief, which, aggregated across the putative 1200-member class, places more than $5,000,000 in controversy, exclusive of interest and costs[1]:

i. Actual Damages: Plaintiff specifically states that the class members potentially incurred $1,513 in "fraud-related economic loss" and $354 in "out-of-pocket expenses." Ex. B, ¶ 39. Multiplied by the alleged 1200-member class, this allegation alone places $2,240,400 in controversy. Additionally, Plaintiff seeks to recover "the value of [the class members'] time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Data Breach," *Id.* ¶ 41(v), which Plaintiff alleges to be in the "hundreds of hours." *Id.* ¶ 39. If each class member spent only 325

---

[1] To be clear, CAFA requires that $5,000,000 be placed into controversy by the *allegations* asserted in the Petition. Rockhurst in no way concedes that such damages do, in fact, exist or that they are recoverable by Plaintiff or any of the putative class members. Rockhurst expressly reserves its right to contest all damages asserted on any grounds available as this case progresses.

hours (on the low end of Plaintiff's "hundreds of hours" allegation), and their time is conservatively valued at Missouri's $7.65-per hour minimum wage,[2] then this category of damages totals over $3,000,000. Added to the "loss" and "expenses" of $2,240,400, these two categories of alleged damages alone satisfy CAFA's amount in controversy threshold. In addition to these independently-sufficient damage allegations, Plaintiff also seeks *actual damages* for:

- "loss of privacy," *id.*, ¶¶ 5, 41, 57, 62, 68;

- "expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other Data Breach risk mitigation products," *id.*, ¶¶ 38, 41, 62, 68; and

- "deprivation of the value of [the class members'] PII/PHI," *id.*, ¶¶ 6, 41, 57, 62 68, 72.

In addition to these damages, the Petition alludes to damages for rectifying additional fraudulent activity including the issuance of false drivers licenses, obtaining fraudulent government benefits, fraudulently renting houses or apartments, improperly obtaining medical treatment, and the improper issuance of arrest warrants. *See id.*, ¶ 24.

ii. <u>Injunctive Relief</u>: Plaintiff requests an order requiring Rockhurst to bear the costs of disseminating individualized notice to

---

[2] *See* http://labor.mo.gov/DLS/MinimumWage.

the putative class members. Ex. B, p. 19, ¶ F; *Hug v. Am. Traffic Sols., Inc.*, No. 4:14CV00138 ERW, 2014 WL 1689303, at *3 n.7 (E.D. Mo. Apr. 29, 2014) (under CAFA, the cost of complying with "injunctive relief should be valued to determine amount in controversy").

    iii.  <u>Punitive Damages</u>: Plaintiff's Petition is replete with allegations that, if true, would support a punitive damages award under Missouri law. *See, e.g.*, Ex. B, ¶ 4 ("Defendant *flagrantly* disregarded Plaintiff's and the other Class Members' privacy and property rights by *intentionally, willfully and recklessly* failing to take the necessary precautions . . .") (emphasis added); *see also* ¶¶ 32, 35-36 44-45 (making similarly-worded allegations of flagrant, intentional, or willful conduct). Courts must consider a potential punitive damage award when determining whether CAFA's amount in controversy requirement is satisfied. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013).

    iv.  <u>Attorney's Fees</u>: Plaintiff also seeks to recover her attorney's fees. *See Chochorowski v. Home Depot USA*, 585 F. Supp. 2d 1085, 1093 (E.D. Mo. 2008) (attorneys' fees are considered in determining whether jurisdictional minimum threshold set forth under CAFA is satisfied).

8.    Based on Plaintiff's allegations, requested relief, and matters known to Rockhurst, Plaintiff's proposed class claims place in controversy an

amount exceeding CAFA's $5,000,000 jurisdictional threshold. Because there is a more than 100 putative class members, minimal diversity, and an amount in controversy exceeding $5,000,000, exclusive of interest and costs, Rockhurst has removed this action from the Circuit Court of Jackson County, Missouri to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1453.

## Procedural Compliance

9.    The Circuit Court of Jackson County Missouri is situated within the geographic area comprising Western District of Missouri, so venuje is proper in this District.

10.    Promptly upon filing this Notice of Removal, Rockhurst shall give written notice of the filing to Plaintiff as required by law. Rockhurst is concurrently filing a notice attaching this Notice of Removal with the Circuit Court of Jackson County, Missouri, where this action was originally filed.

WHEREFORE, Defendant Rockhurst University removes the State Court Class Action from the Circuit Court of Jackson County, Missouri to the United States District Court for the Western District of Missouri.

7

Dated this 19th day of May, 2016.

Respectfully submitted,

/s/ Jeffrey B. Jensen

JEFFREY B. JENSEN    MO# 46745
MARK G. ARNOLD    MO# 28369
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri  63105
Telephone  (314) 480-1500
Facsimile  (314) 480-1505
jeffrey.jensen@huschblackwell.com
mark.arnold@huschblackwell.com

MICHAEL T. RAUPP    MO# 65121
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
Telephone  (816) 983-8000
Facsimile  (816) 983-8080
michael.raupp@huschblackwell.com

***Attorneys for Defendant
Rockhurst University***

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic mail and First Class U.S. Mail, postage prepaid, on the 19th day of May, 2016, to:

MITCHELL L. BURGESS
BURGESS LAW FIRM, P.C.
1000 Broadway, Suite 400
Kansas City, MO 64105
Telephone  (816) 471-1700
Facsimile  (816) 471-1701
mitch@burgesslawkc.com

PHYLLIS A. NORMAN
THE NORMAN LAW FIRM LLC
1000 Broadway, 4th Floor
Kansas City, MO 64105
Telephone  (816) 288-9622
Facsimile  (816) 471-1701
phyllis@pnormanlaw.com

RALPH K. PHALEN
RALPH K. PHALEN, ATTORNEY AT LAW
1000 Broadway, Suite 400
Kansas City, MO 64105
Telephone  (816) 589-0753
Facsimile  (816) 471-1701
phalenlaw@yahoo.com

/s/ Jeffrey B. Jensen
***Attorney for Defendant***

9

JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

### CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff(s):**

First Listed Plaintiff:
Alexandria Stobbe ;
**County of Residence:** Jackson County

**Defendant(s):**

First Listed Defendant:
Rockhurst University ;
**County of Residence:** Jackson County

**County Where Claim For Relief Arose:** Jackson County

**Plaintiff's Attorney(s):**

Mitchell L. Burgess (Alexandria Stobbe)
Burgess Law Firm, P.C.
1000 Broadway, Suite 400
Kansas City, Missouri 64105
**Phone:** 816-471-1700
**Fax:** 816-471-1701
**Email:** mitch@burgesslawkc.com

Phyllis A. Norman (Alexandria Stobbe)
The Norman Law Firm LLC
1000 Broadway, 4th Floor
Kasnas City, Missouri 64105
**Phone:** 816-288-9622
**Fax:** 816-471-1701
**Email:** phyllis@pnormanlaw.com

Ralph K. Phalen (Alexandria Stobbe)

1000 Broadway, Suite 400
Kansas City, Missouri 64015
**Phone:** 816-589-0753
**Fax:** 816-471-1701
**Email:** phalenlaw@yahoo.com

**Defendant's Attorney(s):**

Jeffrey B. Jensen ( Rockhurst University)
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
**Phone:** 314-480-1500
**Fax:** 314-480-1505
**Email:** jeffrey.jensen@huschblackwell.com

Mark G. Arnold ( Rockhurst University)
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
**Phone:** 314-480-1500
**Fax:** 314-480-1505
**Email:** mark.arnold@huschblackwell.com

Michael T. Raupp ( Rockhurst University)
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
**Phone:** 816-983-8000
**Fax:** 816-983-8080
**Email:** michael.raupp@huschblackwell.com

**Basis of Jurisdiction:** 3. Federal Question (U.S. not a party)

**Citizenship of Principal Parties** (Diversity Cases Only)

> **EXHIBIT**
>
> **A**

**Plaintiff:** N/A

**Defendant:** N/A

**Origin:** 2. Removed From State Court

    **State Removal County:** Jackson County

    **State Removal Case Number:** 1616-CV09355

**Nature of Suit:** 190 All Other Contract Actions

**Cause of Action:** Class-action complaint asserting contract and tort theories. Removed pursuant to the Class Action Fairness Act (28 U.S.C. Section 1453).

**Requested in Complaint**

    **Class Action:** Class Action under State Statute or Rule

    **Monetary Demand (in Thousands):**

    **Jury Demand:** Yes

    **Related Cases:** Is NOT a refiling of a previously dismissed action

---

**Signature:** Jeffrey B. Jensen

**Date:** 5/19/2016

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.

Electronically Filed - Jackson - Kansas City - April 15, 2016 - 03:37 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT KANSAS CITY**

**ALEXANDRIA STOBBE, individually and**
**on behalf of all others similarly situated,**

       **Plaintiff,**
  **vs.**
**ROCKHURST UNIVERSITY,**
**a Missouri Corporation,**

    **[Serve:  CT Corporation System**
    **120 South Central Avenue**
    **Clayton, MO  63105]**

    **Defendant.**

**Case No.:**
**Division:**

**CLASS ACTION PETITION FOR DAMAGES**

COMES NOW Plaintiff Alexandria Stobbe ("Plaintiff"), individually and on behalf of all others similarly situated, and for her Petition against Defendant Rockhurst University ("Rockhurst" or "Defendant"), respectfully states and alleges as follows:

**NATURE OF THE CASE**

1.      This is a class action brought by Plaintiff, individually and on behalf of all others similarly situated (*i.e*., the Class Members), seeking to redress Defendant's intentional, willful and reckless violations of their privacy rights.  Plaintiff and the other Class Members are faculty, staff and/or are student employees of Rockhurst University who entrusted their personally identifiable information ("PII") to Defendant.  Defendant betrayed Plaintiff's trust by failing to properly safeguard and protect their PII and publicly disclosing their PII without authorization in violation of Missouri common law.

2.      This action pertains to Defendant's April 2016, unauthorized disclosure of employee IRS W-2 forms to a third party (the "Data Breach"), during which Plaintiff's and the

**EXHIBIT**

**B**

other Class Members' PII was stolen and disseminated to unauthorized persons as a direct and/or proximate result of Defendant's failure to safeguard and protect their PII.

3.     The wrongfully disclosed PII included, *inter alia*, Plaintiff's and the other Class Members' names, mailing addresses, salary amounts, withholding amounts, and Social Security numbers.

4.     Defendant flagrantly disregarded Plaintiff's and the other Class Members' privacy and property rights by intentionally, willfully and recklessly failing to take the necessary precautions required to safeguard and protect Plaintiff's and the other Class Members' PII from unauthorized disclosure.  Plaintiff's and the other Class Members' PII was improperly handled, inadequately protected, readily able to be copied by data thieves and not kept in accordance with basic security protocols. Defendant's obtaining of the information and sharing of same also represent a flagrant disregard of Plaintiff's and the other Class Members' rights, both as to privacy and property.

5.     Plaintiff has standing to bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff has incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy and/or (ii) the additional damages set forth in detail below, which are incorporated herein by reference.

6.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.  For example, stolen PII is sold on the cyber black market for $14 to $25 per record to (i) individuals needing or wanting a new identity or healthcare, or focused on committing fraud, (ii)

2

medical service providers, medical device manufacturers and drug manufacturers for targeted marketing and advertising campaigns for their products and services, and (iii) health insurers for targeted marketing and advertising campaigns for their health insurance products and to monitor their insureds' medical conditions for purposes of adjusting their health insurance premiums.

7.      Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud.  Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released its 2012 Identity Fraud Report ("the Javelin Report"), quantifying the impact of data breaches. According to the Javelin Report, individuals whose PII is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft.  Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiff's and the other Class Members' PII and not yet used the information will do so at a later date or re-sell it.

8.      Accordingly, Plaintiff and the other Class Members seek redress against Defendant for breach of implied contract, invasion of privacy by the public disclosure of private facts, common law negligence and bailment.

9.      Plaintiff, on behalf of herself and the other Class Members, seeks (i) actual damages, economic damages, and/or nominal damages, (ii) injunctive relief, and (iii) attorneys' fees, litigation expenses, and costs.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over the parties and the subject matter of this action. Jurisdiction is proper because both Plaintiff and Defendant are residents of the State of Missouri and Defendant is a business operating, and licensed under, the laws of the state of Missouri.

11. Venue is proper in Jackson County, Missouri, pursuant to RSMo §508.010 because the acts complained of occurred and Defendant is located in the City of Kansas City, Missouri.

## PARTIES

12. Plaintiff Alexandria Stobbe is a citizen of Missouri and resides in Jackson County, Missouri. Plaintiff is an employee of Rockhurst University and, as a result, entered into an implied contract with Defendant for the adequate protection of her PII. Plaintiff had her PII exposed as a result of Defendant's inadequate safety and security protocols governing PII.

13. Rockhurst University is a Missouri not-for-profit corporation with its headquarters in Kansas City, Missouri.

## BACKGROUND FACTS

14. Certain allegations are made upon information and belief.

15. As a part of its business operations, Defendant Rockhurst collects and maintains PII of its employees.

16. On or about April 4, 2016, Defendant disclosed employee IRS W-2 forms to an unauthorized third party (the "Data Breach"), during which Plaintiff's and the other Class Members' PII was stolen and disseminated to unauthorized persons.

17. The wrongfully disclosed PII included, *inter alia*, Plaintiff's and the other Class Members' names, mailing addresses, salary amounts, withholding amounts, and Social Security numbers.

4

18.     Upon information and belief, the Data Breach affected an estimated 1200 of Defendant's employees.

19.     As a direct and/or proximate result of Defendant's failure to properly safeguard and protect the PII of its employees, Plaintiff's and the other Class Members' PII was stolen, wrongfully disseminated without authorization and compromised.

20.     On or about April 13, 2016, the President of Rockhurst University informed "Rockhurst Faculty, Staff and Student Employees" of the Data Breach and indicated the University was arranging "identity theft and credit monitoring protection for all affected employees free of charge."

21.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, the criminal(s) and/or their customers now have Plaintiff's and the other Class Members' compromised PII.  There is a robust international market for the purloined PII.  Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud[1] and medical fraud.

22.     Identity theft occurs when someone uses an individual's PII, such as the person's name, Social Security number, or credit card number, without the individual's permission, to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft,  http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/  about-identity-theft.html (last

---

[1] According to the United States Government Accounting Office (GAO), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities.  Identity theft occurs when PII is used to commit fraud or other crimes. These crimes include, *inter alia,* credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services).

visited Jan. 18, 2013).  The Federal Trade Commission estimates that the identities of as many as nine million Americans are stolen each year. *Id.*

23.     The Federal Trade Commission correctly sets forth that "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit." *Id.*

24.     Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information.  Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name.  Identity thieves also have been known to give a victim's PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

25.     According to the FTC, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[2]  Furthermore, "there is significant evidence demonstrating that technological advances and the ability to

---

[2] *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).

Electronically Filed - Jackson - Kansas City - April 15, 2016 - 03:37 PM

combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[3]

26.     According to the Javelin Report, in 2011, the mean consumer cost of rectifying identity fraud was $354 while the mean resolution time of identity fraud was 12 hours.  *Id.* at 6. In 2011, the consumer cost for new account fraud and existing non-card fraud increased 33% and 50% respectively.  *Id.* at 9.   Consumers who received a data breach notification had a fraud incidence rate of 19% in 2011 and, of those experiencing fraud, 43% reported their credit card numbers were stolen and 22% of the victims reported their debit card numbers were stolen.  *Id.* at 10.  More important, consumers who were notified that their PII had been breached were 9.5 times more likely to experience identity fraud than consumers who did not receive such a notification. *Id.* at 39.

27.     The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card.  In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.  *See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327 (http://www.ssa.gov/pubs/10064.html).  Thus, a person whose PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

28.     Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a

---

[3] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35-38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology*, cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

fresh start. For some victims of identity theft, a new number may actually create new problems; because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

29. Medical fraud (or medical identity theft) occurs when a person's personal information is used without authorization to obtain, or receive payment for, medical treatment, services or goods. *See* www.ftc.gov/bcp/edu/microsites/idtheft/consumers/resolving-specific-id-theft-problems.html. For example, as of 2010, more than 50 million people in the United States did not have health insurance according to the U.S. census. This, in turn, has led to a surge in medical identity theft as a means of fraudulently obtaining medical care. "Victims of medical identity theft [also] may find that their medical records are inaccurate, which can have a serious impact on their ability to obtain proper medical care and insurance benefits." *Id.*

30. The Data Breach substantially increased Plaintiff's and the other Class Members' risk of being victimized by "phishing." "Phishing" is an attempt to acquire information (and sometimes, indirectly, money), such as usernames, passwords and credit card details by masquerading as a trustworthy entity through an electronic communication. *See* http://www.onguardonline.gov/articles/0003-phishing (last visited Jan. 18, 2013).

31. Communications purporting to be from popular social websites, auction sites, online payment processors or IT administrators are commonly used to lure the unsuspecting public. Phishing emails may contain links to websites that are infected with malware. Phishing is typically carried out by e-mail spoofing or instant messaging, and often directs users to enter details at a fake website that looks and feels almost identical to the legitimate one. When criminals have access to PII from a large group of similarly situated victims, it is much more

feasible to develop a believable phishing spoof email. They can then get this group of victims to reveal additional private information, such as credit cards, bank accounts, and the like.

32.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by not obtaining Plaintiff's and the other Class Members' prior written consent to disclose their PII to any other person—as required by laws, regulations, industry standards and/or internal company standards.

33.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to safeguard and protect and, in fact, wrongfully disseminating Plaintiff's and the other Class Members' PII to unauthorized persons.

34.     Upon information and belief, Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to keep or maintain an accurate accounting of the PII wrongfully disclosed in the Data Breach.

35.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and the other Class Members' PII to protect against anticipated threats to the security or integrity of such information. Defendant's unwillingness or inability to establish and maintain the proper information security procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or their own internal policies and procedures.

36.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy rights, and harmed them in the process, by depriving Plaintiff and the other Class Members of the value of their PII, for which there is a well-established national and international market.  *See, e.g.,* T. Soma, *et al*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

37.     Aside from the criminal element, frequent purchasers of purloined PII include other data thieves and fraudsters, pharmacies, drug manufacturers, medical device manufacturers, hospitals and insurance companies, who use the information to market their products and services directly to the data breach victims and/or to adjust the victims' medical insurance premiums.  *Id.*  Plaintiff and the other Class Members, not data thieves, should have the right to sell their PII and receive the corresponding financial benefits.

38.     The actual harm and adverse effects to Plaintiff and the other Class Members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's above wrongful actions and/or inaction and the resulting Data Breach requires Plaintiff and the other Class Members to take affirmative acts to recover their peace of mind, and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts—for which there is a financial and temporal cost.

10

Plaintiff and the other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

39.     Victims and potential victims of identity theft, identity fraud and/or medical fraud—such as Plaintiff and the other Class Members—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from data breaches. *See Defend: Recover from Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft//consumers/defend.html; *Fight Identity Theft*, www.fightidentitytheft.com.  According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for data breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of $1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation. *Id*. at 6.

40.     Other statistical analyses are in accord.  The GAO found that identity thieves use PII to open financial accounts and payment card accounts and incur charges in a victim's name. This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, in the meantime causing significant harm to the victim's credit rating and finances.  Moreover, unlike other PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future.  The GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

41.     Defendant's wrongful actions and/or inaction directly and/or proximately caused the theft and dissemination into the public domain of Plaintiff's and the other Class Members' PII without their knowledge, authorization and/or consent.  As a direct and/or proximate result of

11

Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy, (ii) the imminent, immediate and continuing increased risk of identity theft, identity fraud and/or medical fraud, (iii) out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other Data Breach risk mitigation products, (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Data Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze, (v) the value of their time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Data Breach, and/or (vi) deprivation of the value of their PII/PHI, for which there is a well-established national and international market.

## CLASS ACTION ALLEGATIONS

42.     Pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure, Plaintiff brings this class action as a class action on behalf of herself and the following Class of similarly situated individuals:

> **All persons who were employed by Defendant and whose names, mailing addresses, salary amounts, withholding amounts, and/or Social Security numbers contained in the employees W-2 forms were disclosed by Defendant.**

43.     On information and belief, the putative Class is comprised of approximately 1200 employees making joinder impracticable.  Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

44.     The rights of Plaintiff and each other Class Member were violated in a virtually identical manner as a direct and/or proximate result of Defendant's willful, reckless and/or negligent actions and/or inaction and the resulting Data Breach.

12

45.     Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, *inter alia*:

      a)    Whether Defendant willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the other Class Members' PII;

      b)    Whether Defendant was negligent in failing to properly safeguard and protect Plaintiff's and the other Class Members' PII;

      c)    Whether Defendant owed a duty to Plaintiff and the other Class Members to exercise reasonable care in safeguarding and protecting their PII;

      d)    Whether Defendant breached its duty to exercise reasonable care in failing to safeguard and protect Plaintiff's and the other Class Members' PII;

      e)    Whether Defendant was negligent in failing to safeguard and protect Plaintiff's and the other Class Members' PII;

      f)    Whether, by publicly disclosing Plaintiff's and the other Class Members' PII without authorization, Defendant invaded their privacy; and

      g)    Whether Plaintiff and the other Class Members sustained damages as a result of Defendant's failure to safeguard and protect their PII.

46.     Plaintiff and her counsel will fairly and adequately represent the interests of the other Class Members. Plaintiff has no interests antagonistic to, or in conflict with, the other Class Members' interests. Plaintiff's lawyers are highly experienced in the prosecution of consumer class action and data breach cases.

47.     Plaintiff's claims are typical of the other Class Members' claims in that Plaintiff's claims and the other Class Members' claims all arise from Defendant's failure to properly safeguard and protect their PII.

13

48.     A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other Class Members' claims.  Plaintiff and the other Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the resulting Data Breach.  Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct.

49.     Class certification, therefore, is appropriate pursuant to Missouri Rule 52.08(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

50.     Class certification also is appropriate pursuant to Missouri Rule 52.08(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

51.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.  Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law.

## COUNT I

## BREACH OF IMPLIED CONTRACT

52.     The preceding factual statements and allegations are incorporated herein by reference.

53.     Plaintiff and the other members of the Class, as part of their employment agreement with Defendant, provided Defendant their PII.

54.     In providing such PII, Plaintiff and the other members of the Class entered into an implied contract with Defendant, whereby Defendant became obligated to reasonably safeguard

14

Plaintiff's and the other Class members' PII.

55.     Under the implied contract, Defendant was obligated to not only safeguard the PII, but also to provide Plaintiff and Class members with prompt, adequate notice of any Data Breach or unauthorized access of said information.

56.     Defendant breached the implied contract with Plaintiff and the other members of the Class by failing to take reasonable measures to safeguard their PII.

57.     Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and (vii) deprivation of the value of their PII, for which there is a well-established national and international market—for which they are entitled to compensation.  At the very least, Plaintiff and Class members are entitled to nominal damages.

## COUNT II

## NEGLIGENCE

58.     The preceding factual statements and allegations are incorporated herein by reference.

59.     Defendant owed a duty to Plaintiff and the other Class Members to safeguard and protect their PII.

60.     Defendant breached its duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiff's and the other Class Members' PII.

15

Electronically Filed - Jackson - Kansas City - April 15, 2016 - 03:37 PM

61.     It was reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PII would result in an unauthorized third party gaining access to such information for no lawful purpose.

62.     Plaintiff and the other Class Members were (and continue to be) damaged as a direct and/or proximate result of Defendant's failure to secure and protect their PII in the form of, *inter alia*, expenses for adequate credit monitoring and identity theft insurance, out-of-pocket expenses, such as costs for placing a credit freeze or removing a credit freeze, loss of privacy, deprivation of the value of their PII, and other economic and non-economic harm (as detailed above), for which they are entitled to compensation.

63.     Defendant's wrongful actions and/or inaction and the resulting Data Breach (as described above) constituted (and continue to constitute) negligence at common law.

## COUNT III

## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

64.     The preceding factual statements and allegations are incorporated herein by reference.

65.     Plaintiff's and the other Class Members' PII was (and continues to be) sensitive and personal private information.

66.     By virtue of Defendant's failure to safeguard and protect Plaintiff's and the other Class Members' PII and the resulting Data Breach, Defendant wrongfully disseminated Plaintiff's and the other Class Members' PII to unauthorized persons.

67.     Dissemination of Plaintiff's and the other Class Members' PII is not of a legitimate public concern; publicity of their PII was, is and will continue to be offensive to

16

Plaintiff, the other Class Members and all reasonable people. The unlawful disclosure of same violates public mores.

68.     Plaintiff and the other Class Members were (and continue to be) damaged as a direct and/or proximate result of Defendant's invasion of their privacy by publicly disclosing their private facts (*i.e.*, their PII) in the form of, *inter alia*, expenses for adequate credit monitoring and identity theft insurance, out-of-pocket expenses, such as costs for placing a credit freeze or removing a credit freeze, loss of privacy, deprivation of the value of their PII, and other economic and non-economic harm (as detailed above), for which they are entitled to compensation.  At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

69.     Defendant's wrongful actions and/or inaction and the resulting Data Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e.*, their PII) without their authorization or consent.

## COUNT IV

## BAILMENT

70.     The preceding factual statements and allegations are incorporated herein by reference.

71.     Plaintiff and the other Class Members entrusted their PII to Defendant as part of their business relationship with Defendant.  Plaintiff and the other Class Members were entitled to trust that their PII in Defendant's possession would likewise be properly protected from unlawful access.

Electronically Filed - Jackson - Kansas City - April 15, 2016 - 03:37 PM

72.    Plaintiff's and the other Class Members' PII is their personal property. Defendant's wrongful actions and/or inaction and the resulting Data Breach deprived them of the value of their PII, for which there is a well-established national and international market, because the PII is now in the hands of unauthorized person(s) and compromised.

73.    During the time of bailment, Defendant owed Plaintiff and the other Class Members the duty to safeguard and protect their PII by maintaining reasonable and effective data security practices, procedures and protocols to protect their PII.  As alleged herein, Defendant breached its duty to Plaintiff and the other Class Members by failing to safeguard and protect their PII which, in turn, directly and/or proximately caused the Data Breach and the wrongful dissemination of their PII to unauthorized persons.

74.    Defendant's breach of this duty directly and/or proximately caused Plaintiff and the other Class Members to suffer (and continue to suffer) the injuries and damages alleged herein.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing Plaintiff's counsel as Lead Counsel for the Class;

B.    declaring that Defendant breached its implied contract with Plaintiff and Class members;

C.    declaring that Defendant negligently disclosed Plaintiff's and the Class members PII;

D.      declaring that Defendant has invaded Plaintiff's and Class members' privacy;

E.      Ordering Defendant to pay actual damages to Plaintiff and the other members of the Class;

F.      Ordering Defendant to disseminate individualized notice of the Data Breach to all Class members;

G.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

H.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

I.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and the other Class Members, respectfully demands a trial by jury on all of his claims and causes of action so triable.

Respectfully submitted,

*/s/Mitchell L. Burgess*
**BURGESS LAW FIRM, P.C.**
Mitchell L. Burgess,   Mo. Bar # 47524
1000 Broadway, Suite 400
Kansas City, MO 64105
(816) 471-1700
(816) 471-1701 FAX
mitch@burgesslawkc.com

**THE NORMAN LAW FIRM LLC**
Phyllis A. Norman, Mo. Bar #55887
1000 Broadway, 4th Floor
Kansas City, MO 64105
(816) 288-9622
(816) 471-1701
phyllis@pnormanlaw.com

19

**RALPH K. PHALEN, ATTORNEY AT LAW**
Ralph K. Phalen, Mo. Bar #36687
1000 Broadway, Suite 400
Kansas City, Mo. 64105
(816) 589-0753
(816) 471-1701 FAX
phalenlaw@yahoo.com


**ATTORNEYS FOR PLAINTIFF**



EXHIBIT
C



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>SANDRA C. MIDKIFF | Case Number: 1616-CV09355 |
| Plaintiff/Petitioner:<br>ALEXANDRIA STOBBE | Plaintiff's/Petitioner's Attorney/Address<br>MITCHELL L BURGESS<br>BURGESS & GREEN, PC<br>1000 BROADWAY<br>SUITE 400<br>KANSAS CITY, MO 64105 |
| Defendant/Respondent:<br>ROCKHURST UNIVERSITY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

vs.

## Summons in Civil Case

| The State of Missouri to: | ROCKHURST UNIVERSITY<br>A CORPORATION |
|---|---|

CT CORPORATION SYSTEM
120 S CENTRAL AVE
CLAYTON, MO 63105

**PRIVATE PROCESS SERVER**

*COURT SEAL OF*

**CIRCUIT COURT OF MISSOURI**

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

19-APR-2016
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____          _____
Date          Notary Public

| **Sheriff's Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

**EXHIBIT D**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>SANDRA C. MIDKIFF | Case Number: 1616-CV09355 |
|---|---|
| Plaintiff/Petitioner:<br>ALEXANDRIA STOBBE | Plaintiff's/Petitioner's Attorney/Address<br>MITCHELL L BURGESS<br>BURGESS & GREEN, PC<br>1000 BROADWAY<br>SUITE 400<br>KANSAS CITY, MO 64105 |
| vs. | |
| Defendant/Respondent:<br>ROCKHURST UNIVERSITY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: ROCKHURST UNIVERSITY
                          A CORPORATION

CT CORPORATION SYSTEM
120 S CENTRAL AVE
CLAYTON, MO 63105

**PRIVATE PROCESS SERVER**

COURT SEAL OF

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

JACKSON COUNTY

19-APR-2016 _____
      Date                              Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_Andrea Corins_ (name) _Assoc. Corp Operations Spec._ (title).

☐ other _____

Served at _120 S. Central Ave. Clayton, MO 63105_ (address)

in _St Louis_ (County/City of St. Louis), MO, on _4/20/2016_ (date) at _9:44 am_ (time).

_Martin Hoeschen_                          _Martin Hoeschen_
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

JUDY LORAIN VAUGHN
Notary Public-Notary Seal
State of Missouri, St Louis County
Commission # 15511776
My Commission Expires May 15, 2019

Subscribed and sworn to before me on _4/21/2016_ (date).

My commission expires: _May 15, 2019_          _Judy Lorain Vaughn_
                        Date                      Notary Public

### Sheriff's Fees

| Summons | $ |
|---|---|
| Non Est | $ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $ ( ___ miles @ $. ___ per mile) |
| Total | $ |

**EXHIBIT E**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.